IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER MICHAEL WANKEN | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-10-CV-0556-K-BD |
| | § | |
| JOHN DWIGHT WANKEN, ET AL. | § | |
| | § | |
| Defendants. | § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Defendants John Dwight Wanken ("Dwight") and Raymond James Financial Services, Inc. ("Raymond James") have filed separate Rule 12(b)(6) motions to dismiss this *pro se* civil action brought by plaintiff to vacate or modify an arbitration award. For the reasons stated herein, the court should treat the Rule 12(b)(6) motions as cross-motions to confirm the award, both of which should be granted. Plaintiff's motion to vacate or modify the award should be denied.

I.

As best the court can decipher the prolix pleadings and exhibits submitted by the parties, it appears that plaintiff worked as a registered sales associate for a Raymond James brokerage business owned by his father, Dwight. (*See* Plf. Mot. at 14, ¶ 6). On March 13, 2008, Dwight terminated plaintiff's financial services license, which effectively ended his association with Raymond James. (*Id.* at 16, ¶ 16). That action prompted plaintiff to sue his father and Raymond James in Texas state court. (*Id.* at 16, ¶ 17). After the state court granted a motion to compel arbitration,[1] plaintiff filed

---

[1] Defendants moved to compel arbitration under the rules established by the Financial Industry Regulatory Authority ("FINRA"), which provide for the mandatory arbitration of disputes arising out of the business activities of a "member" or an "associated person." *See* FINRA Manual R. 13200(a).

a statement of claim with a FINRA Dispute Resolution Panel seeking nearly $400,000 in actual damages and more than $10 million in punitive damages for: (1) breach of contract, (2) breach of partnership, (3) failure to pay compensation, commissions, and partnership benefits, (4) wrongful termination, (5) libel and slander on a Form U-5 statement of termination,[2] and (6) defamation. (*See* Mag. J. Interrog. #5(d), attch. at Page ID 144-45). Dwight counterclaimed for costs incurred in defending what he characterized as a groundless and frivolous proceeding. (*Id.* at Page ID 145). Following extensive discovery, six pre-hearing sessions, and a four-day hearing, a panel of three arbitrators ordered the expungement of a comment about plaintiff from the Form U-5, but denied all other relief. (*Id.* at Page ID 147). Costs in the amount of $1,200 were taxed against Raymond James. (*Id.*). Plaintiff then filed this action in federal district court.

As grounds for vacating the arbitration award, plaintiff contends that:

- the award was procured by fraud;

- the arbitration panel failed to assure complete discovery, enforce its own discovery orders, and coordinate the presence of key witnesses;

- the arbitrators refused to consider material evidence;

- the panel exceeded and improperly exercised its powers; and

- defendants and their attorneys engaged in misconduct both during and following the arbitration.

---

[2] FINRA requires member firms to complete and file a Form U-5 within 30 days of terminating an agent's employment. The Form U-5 contains the reasons for termination and a number of questions that address whether the agent had been subject to criminal charges, customer complaints, or an internal review for violating investment rules. *See Wang v. Prudential Ins. Co. of America*, No. 3-09-CV-1309-O-BF, 2010 WL 1640182 at *3 n.1 (N.D. Tex. Apr. 2, 2010), *rec. adopted*, 2010 WL 1628991 (N.D. Tex. Apr. 20, 2010), *and* 2010 WL 2000521 (N.D. Tex. May 18, 2010), *appeal filed*, Jul. 19, 2010 (No. 10-10731). Once filed, the Form U-5 becomes available to the investing public for review.

(*See* Plf. Mot at 2-9; Mag. J. Interrog. #1).³ In separate motions, Dwight and Raymond James move to dismiss this case for failure to state a claim upon which relief can be granted. Dwight also contends that plaintiff's motion is untimely because it was not properly served within three months of the date the arbitration award was filed or delivered. The issues have been briefed by the parties, and this matter is ripe for determination.

II.

The court initially observes that the Federal Rules of Civil Procedure, including responsive motion practice under Rule 12(b), do not apply to the judicial review of arbitration decisions. *See Alstom Power, Inc. v. S&B Engineers & Constructors, Ltd.*, No. 3-04-CV-2370-L, 2007 WL 1284968 at *3-4 (N.D. Tex. Apr. 30, 2007) (citing cases). Instead, an application to vacate an arbitration award "is to be treated procedurally in the manner of a motion." *Health Services Management Corp. v. Hughes*, 975 F.2d 1253, 1258 (7th Cir. 1992) (citing cases). Plaintiff initiated this civil action by filing a motion to vacate or modify the arbitration award. The court therefore treats the Rule 12(b)(6) motions filed by Dwight and Raymond James as cross-motions to confirm the award.

---

³ Although plaintiff also asks the court to modify the arbitration award, such relief is appropriate only:

    (a)    where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award;

    (b)    where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted; or

    (c)    where the award is imperfect in matter of form not affecting the merits of the controversy.

*See* 9 U.S.C. § 11. Plaintiff does not cite this statute or argue these grounds in his written submissions.

Under the Federal Arbitration Act ("FAA"), which generally governs arbitration issues in federal court, review of an arbitration decision is "exceedingly deferential." *Brabham v. A.G. Edwards & Sons, Inc.*, 376 F.3d 377, 380 (5th Cir. 2004). A district court can vacate an arbitration award only:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a); *see also Citigroup Global Markets, Inc. v. Bacon*, 562 F.3d 349, 353, 358 (5th Cir. 2009) (grounds for vacating or modifying arbitration award are restricted to those set forth in the FAA). This standard "has been described as 'among the narrowest known to the law.'" *Mantle v. Upper Deck Co.*, 956 F.Supp. 719, 726 (N.D. Tex. 1997), *quoting ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995). The party seeking to vacate an arbitration award has the burden of proof. *See Weber v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 455 F.Supp.2d 545, 549 (N.D. Tex. 2006) (citing cases). Any doubts or uncertainties must be resolved in favor of upholding the award. *Id.*

A.

Plaintiff contends that the arbitration decision was procured by fraud in two ways. First, he alleges that Dwight gave "fraudulent and erroneous testimony regarding numerous matters during

the course of the arbitration," including: (1) the professional relationship between the parties, (2) the duties performed by plaintiff, (3) his role in the business, and (4) the reason plaintiff was terminated. (*See* Plf. Resp. Br. at 12). Second, plaintiff accuses Dwight of concealing "thousands of pages of documents," which denied him the opportunity to review material evidence, question witnesses, and fully present his claims to the arbitration panel. (*See* Plf. Mot. at 22-26).

Neither allegation justifies vacating the arbitration award. Although obtaining an award by false or perjured testimony may constitute fraud, *see e.g. Red Apple Supermarkets/Supermarkets Acquisitions v. Local 338, RWDSU*, No. 98-CV-2303, 1999 WL 596273 at *6 (S.D.N.Y. Aug. 9, 1999) (citing cases), a party seeking relief on that ground must prove, *inter alia*, that the fraud could not have been discovered through the exercise of due diligence prior to or during the arbitration. *See Haliburton Energy Services, Inc. v. NL Industries*, 618 F.Supp.2d 614, 635 (S.D. Tex. 2009), *citing Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 (11th Cir. 1988). If Dwight testified falsely at the arbitration hearing, plaintiff certainly was aware of that at the time. Plaintiff does not contend otherwise. Instead, he appears to fault the arbitrators for crediting Dwight's testimony over his own. "Mere conflicting versions of the facts at an arbitration hearing cannot constitute fraud for purposes of vacatur without every arbitration award being vacated for this reason." *In re Goldbronn*, 263 B.R. 347, 358 (Bankr. M.D. Fla. 2001). Indeed, "[f]actual conflicts are the stuff of contested proceedings and determining the facts is the charge of every arbiter who sits as a trier of fact." *Williams v. Mexican Restaurant, Inc.*, No. 1-05-CV-841, 2009 WL 531859 at *10 (E.D. Tex. Feb. 27, 2009) (citing cases), *rec. adopted*, 2009 WL 747141 (E.D. Tex. Mar. 18, 2009). This court cannot vacate the arbitration award merely because the arbitrators chose to believe Dwight's testimony over plaintiff's. *See Int'l Brotherhood of Firemen & Oilers, Local 261 v. Great Northern*

*Paper Co.*, 765 F.2d 295, 296 (1st Cir. 1985) (citing cases) (courts are precluded from interfering with arbitration awards for mere errors in assessing the credibility of witnesses).

Nor has plaintiff shown that Dwight committed fraud by concealing "thousands of pages of documents." The arbitrators considered this issue, ordered the production of certain documents, and refused to sanction defendants or order additional production. (*See* RJ Mot. App. at 273-82). Even if that decision was incorrect, plaintiff has not established a nexus between the alleged fraud and the basis for the panel's decision. *See Forsythe International, S.A. v. Gibbs Oil Co. of Texas*, 915 F.2d 1017, 1022-23 (5th Cir. 1990) (where arbitration panel hears the allegation of fraud and then rests its decision on grounds clearly independent of the issues connected to the alleged fraud, there is no statutory basis for vacating the award). The court finds no basis for vacating the arbitration award under section 10(a)(1).

B.

Plaintiff further alleges that the arbitrators were biased against him. In order to establish evident partiality based on actual bias, "the party urging vacatur must produce specific facts from which 'a reasonable person would have to conclude that the arbitrator was partial to one party." *Householder Group v. Caughran*, 354 Fed.Appx. 848, 852, 2009 WL 4016450 at *3 (5th Cir. Nov. 20, 2009), *quoting Weber*, 455 F.Supp.2d at 550. Plaintiff does not come close to meeting this onerous burden. Instead, his bias claim is supported only by conclusory assertions that the arbitration panel excluded certain evidence, made unfavorable discovery rulings, and did not assist in coordinating the appearance of witnesses. (*See* Plf. Mot. at 24-29). These allegations are wholly insufficient to establish "evident partiality or corruption" under section 10(a)(2). *See Householder Group*, 2009 WL 4016450 at *3 (party seeking to vacate arbitration award must demonstrate that

alleged partiality is "direct, definite, and capable of demonstration rather than remote, uncertain or speculative").

In a related argument, plaintiff accuses the arbitrators of misconduct by refusing to hear evidence "pertinent and material to the controversy." (*See* Plf. Mot. at 32-33). The Fifth Circuit has made clear that "[a]rbitrators are not bound to hear all of the evidence tendered by the parties[.]" *See Prestige Ford v. Ford Dealer Computer Services, Inc.*, 324 F.3d 391, 395 (5th Cir. 2003), *overruled on other grounds by Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584-85, 128 S.Ct. 1396, 1403, 170 L.Ed.2d 254 (2008). However, "they must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments." *Id.* Here, plaintiff was permitted to call seven witnesses and introduce hundreds of pages of exhibits during a 32-hour arbitration hearing. (*See* Plf. Resp. Br. at 16, 19). Prior to the hearing, plaintiff engaged in extensive discovery, including propounding 170 requests for production to defendants. (*See* RJ Mot. App. at 238-58). The arbitrators heard multiple discovery motions filed by plaintiff, and issued at least two orders requiring defendants to produce additional documents. (*Id.* at 273-82). Although plaintiff alleges that most of the 6,000 pages of documents produced by defendants were "non-responsive" to his discovery requests, (*see* Plf. Resp. Br. at 16), he does not further elaborate on that claim. Nor does plaintiff identify any witnesses who were not permitted to testify at the arbitration hearing, or explain how their excluded testimony was material to his case. With respect to his allegation that the arbitration panel failed to "coordinate" the appearance of witnesses, (*see id.* at 19-20), plaintiff cites no authority imposing such a duty on the arbitrators. In sum, plaintiff has failed to carry his burden of demonstrating that vacatur is warranted under section 10(a)(2) or (3).

C.

Plaintiff argues that the arbitrators exceeded their powers, or imperfectly executed them, by: (1) failing to enforce their own discovery orders, (2) issuing contradictory orders regarding witness subpoenas, (3) refusing to reconsider a discovery ruling, (4) not informing plaintiff that he was entitled to a continuance, (5) preventing plaintiff from communicating with the media through a "gag" order, and (6) making an "ambiguous and contradictory" award. (*See id.* at 22-23). None of these arguments suggest that the arbitrators acted contrary to the express contractual provisions of the arbitration agreement, or the plain limitations on their powers as stated in the agreement. *Cf. Apache Bohai Corp. LDC v. Texaco China BV*, 480 F.3d 397, 401 (5th Cir. 2007). Plaintiff does not allege, much less prove, that the arbitrators were not authorized by the express terms of the arbitration agreement to make any of the rulings he challenges in his motion. Instead, plaintiff criticizes the substance of those rulings and the final decision of the arbitration panel. "[I]f an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509, 121 S.Ct. 1724, 1728, 149 L.Ed.2d 740 (2001) (citations and internal quotes omitted). There simply is no basis for vacating the arbitration award under section 10(a)(4).

D.

Finally, plaintiff accuses defendants and their attorneys of engaging in misconduct both during and following the arbitration. (*See* Plf. Mot. at 34-36; Plf. Resp. Br. at 14-15). "The [FAA] does not provide for vacatur in the event of any fraudulent conduct, but only 'where the *award was procured* by corruption, fraud, or undue means.'" *Forsythe*, 915 F.2d at 1022, *quoting* 9 U.S.C. § 10(a) (emphasis in original). None of the accusations of misconduct on the part of defendants, which

primarily involve filing a motion for injunctive relief in an attempt to bias the arbitrators against plaintiff, and providing "contradictory testimony and evidence" to state and federal agencies following the arbitration hearing, (*see* Plf. Resp. Br. at 14-15), are grounds for vacating the arbitration award.

## **RECOMMENDATION**

The Rule 12(b)(6) motions to dismiss filed by defendants should be treated as cross-motions to confirm the arbitration award. Both motions [Docs. #18, 23] should be granted.[4] Plaintiff's motion to vacate or modify the award [Doc. #1] should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

---

[4] In view of the recommended disposition of these motions, the court need not consider Dwight's alternative argument that he was not timely or properly served with plaintiff's motion.

DATED: January 13, 2011.

_____
JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE